STATE OF VERMONT

ENVIRONMENTAL COURT

|                                        |   |                          |
|----------------------------------------|---|--------------------------|
| In re Appeal of                        | } | Docket No. 183-11-97 Vtec |
| James D. Sparkman, Jr., <u>et</u> <u>al.</u> | } |                          |

Decision and Order on Scope of Discovery on Motions for Sanctions

A group of interested persons[1] (the Appellant Group) appealed from a decision on a Town of Manchester permit issued to Appellee-Applicant H.B. Partners for the so-called Walker II project.  The Appellant Group is represented by David Putter, Esq. and Appellee H.B. Partners is represented by A.Jay Kenlan, Esq.  The Town of Manchester was represented by Robert E. Woolmington, Esq., but takes no role in the remaining motions for sanctions.

In October of 1998, Appellee H.B. Partners had moved for a protective order which sought a limitation on the Appellant Group's discovery related to its seeking sanctions against Appellee.  The Court had issued an order on November 12, 1998 ("the November 1998 Order") with respect to that motion.  Issues regarding sanctions, and discovery on those issues, were postponed pending the hearing and decision on the merits of the appeal.

---

1  In an exchange of correspondence in December 1999, the parties discussed the question of whether Mr. Sparkman may also qualify for party status as an individual, under 24 V.S.A. §4464(b)(3).  The Court understands the status of this question to be as addressed in its November 12, 1998 order, at page 2:  "Should that group ever fall below ten members, the Court would then entertain an application from any remaining members for individual party status, at which time any additional discovery directed at their standing under §4464(b)(3) would be considered by the Court."

The merits of the appeal were resolved by a consent order filed in February of 1999. In October and November of 1999, the Court held telephone conferences with the parties to determine if the issues regarding sanctions had been abandoned by the parties as the underlying merits of the case had been resolved. The parties determined to proceed with their sanctions motions, and have sought further discovery or protective orders in that regard, including a request for clarification of the Court's November 1998 Order.

The Appellant Group sought to take the depositions of Mr. Kirk Moore and Mr. Ben Hauben on the following topics, as outlined in its letter filed November 17, 1999:

1.      The use and timing of deposition notices and subpoenas directed at present and past members of the Appellant group in this litigation.

2.      The acquisition, evaluation and use, by applicant and its agents, for this litigation, of personal credit reports of Sparkman and the telephone calling records of Sparkman, attorneys and others they believed to be working with him to oppose a permit for the Walker II Project.

3.      The Applicant's use, during this litigation, of the media for purposes of trying to influence the outcome of the Walker II Project permit litigation.

4.      The delivery of discovery requests and other communication from Applicant's counsel directly to individual members of the Appellant group without the consent or permission of the latter's counsel.

Appellee did not oppose discovery on topics 1[2] and 4; the present order addresses the availability and scope of discovery on the remaining two issues.

The Scope of the November 1998 Order

The Appellant Group argues that the November 1998 Order addressed these discovery issues and already allowed the Appellant Group to conduct depositions on these issues. However, that order did not do so. The November 1998 Order ruled that discovery

---

2 Topic 1 may involve Appellee's former counsel, rather than its present counsel, and the Court assumes that the parties are keeping Appellee's former counsel advised of this issue.

was not limited to the incident in which discovery was sent to the individual members of the Appellant Group, as Appellee had then argued, but it did not define the incidents or actions which would be ruled to be discoverable. Rather, it merely stated the standard that the Court would apply in determining what actions or incidents would be discoverable, if the parties could not agree, and set out a mechanism by which the parties could apply to the Court for further definition if necessary.

The November 1998 Order stated the context of the then-pending motions as follows:

> The Court granted Appellant Group's motion for an expedited protective order to assure that the individual members of the group are protected from what the motion characterized as harassment. The incident which prompted the motion was that Appellee served a ninety-page set of interrogatories and requests to admit on each of the individual members of the Appellant Group, rather than serving it on their attorney, Mr. Putter. The Court reserved ruling on the request for sanctions pending Appellant Group's completion of discovery related to the motion for sanctions. The motion for sanctions requests sanctions not only for the "individual discovery" incident, but also for an asserted "pattern and practice" of using civil procedure and "other devices" to induce the members of the Appellant Group to abandon their claims in this case.

As to Appellee's Motion for a Protective Order limiting the Appellant Group's discovery, the Court ruled in the November 1998 Order as follows:

> This Court can only act on matters within its jurisdiction. Therefore, Appellant Group may only have discovery in this Court of Appellee's or its agents' actions respecting litigation before this Court. The discovery may extend beyond investigation of the "individual discovery" incident and may extend to the patterns and practices of discovery and other devices used by Appellee in this appeal (whether represented by present or by former counsel) and, if there are any, in any prior cases in this Court involving both this Appellee and any of the members of this Appellant Group. If any of the discovery relates to claims which may be cognizable instead in Superior Court, the Appellant Group and its attorney may have available to them V.R.C.P. 27(a) if such claim cannot now be brought, but any application or motion must be made to the Superior Court.
> If the parties remain concerned that at the deposition they will not be able to

agree on the scope of the deposition of Mr. Hauben, even with the guidance of the above ruling, then they may schedule the deposition for a day on which Judge Wright is available . . . to rule on any such disputes.

Because the November 1998 Order did not resolve the scope of discovery on the two issues now before the Court, they are addressed in the present order.


Discovery Topics 2 and 3

A court can only direct discovery into allegedly sanctionable acts if the court would have the authority to impose sanctions for the conduct.  A trial court has authority to impose sanctions on attorneys and parties pursuant to at least V.R.C.P. 11 and 37, in addition to the court's inherent power.  See Chambers v. NASCO, Inc., 501 U.S. 32 (1991).

Vermont Rule of Civil Procedure 11 governs the submissions of pleadings, motions and other papers in court proceedings.  It states that the attorney (or unrepresented party) filing the papers certifies that they are not being presented to the court for any improper purpose, such as to harass the other parties or to delay the litigation.  Rule 11 allows the court to  "impose an appropriate sanction upon the attorneys, law firms, or parties" filing the papers, if the court determines that the filings were frivolous or were submitted for an improper purpose.  Rule 11 may apply to discovery topics 1 and 4, but it does not apply to discovery topics 2 and 3 because the allegedly sanctionable conduct does not involve the submission of any pleadings, motions or other papers in any court-related proceedings.

Vermont Rule of Civil Procedure 37 provides that a court may impose sanctions on a party or the attorney advising that party for failure to obey a court order requiring the party to provide discovery.  Rule 37 does not apply to discovery topics 2 and 3 because the allegedly sanctionable conduct was not the subject of a court discovery order.

Courts also may exercise an inherent power to impose sanctions for acts which abuse the judicial process and thereby degrade the judicial system, but which are beyond the scope of the rules.  These inherent powers include the power to discipline attorneys, to punish for contempt, to vacate an order procured by fraud, to bar a disruptive person from the courtroom, to dismiss a suit for failure to prosecute, and, in appropriate cases, to assess attorney's fees against a party or against counsel.  See discussion of these powers

in <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, at 43-46. However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." <u>Id.</u> at 444. And see, <u>In re Sherman Hollow, Inc.</u>, 160 Vt. 627 (1993); <u>Van Eps v. Johnston</u>, 150 Vt. 553 (1988).

The conduct which was the subject of the sanctions in <u>Chambers v. NASCO, Inc.</u> included a party's actions to deprive the court of jurisdiction by fraudulent transfers of property, and tactics of "delay, oppression, harassment and massive expense" by which a party attempted to reduce the other "to exhausted compliance." <u>NASCO, Inc. v. Calcasieu Television & Radio, Inc.</u>, 124 F.R.D. 120, 138 (1989).

By contrast, the conduct about which the Appellant Group seeks the contested discovery would not support sanctions under the inherent power in the present case, unless it was conducted by Appellee's counsel in violation of a disciplinary rule, although we leave open the possibility[3] that it might support an independent civil or even criminal cause of action. That is, the asserted conduct, even if conducted with the asserted motive of discouraging members of the Appellant Group from persisting with their appeal, does not implicate either disrespect for the authority of the Court or disobedience to its orders, except to the extent that it may have been conducted by or directed by Appellee's counsel at the time.

---

3  This decision specifically takes no position and makes no ruling as to whether any of the asserted conduct could support an independent civil claim for defamation, abuse of process, intentional infliction of emotional distress, or any other tort; whether it could support a criminal prosecution for witness intimidation under 13 V.S.A. §3015; or even whether evidence of it could have been admissible in the trial on the merits of the appeal in this court. <u>E.g.</u>, <u>Chatfield v. Morgan,</u> 99 Vt. 337 (1926) (in tort action, defendant's letter threatening plaintiff with dire consequences unless suit was discontinued, held admissible over objection of immateriality).

The Appellant Group seeks discovery regarding Appellee's use of the media, including the issuance of press releases, to "influence the litigation[4]" (then pending before this Court) and to influence the Appellant Group.  A litigant's airing of issues regarding pending litigation in a civil non-jury case such as this one may be intended to influence public opinion, and may have been intended to discourage individuals from joining in the Appellant Group, but such conduct is not prohibited by any statute or court rule, unless it was done or directed to be done by the litigant's attorney. Nor did this Court issue any protective orders to prevent anyone from discussing any aspects of this case.

A litigant's attorney in a civil action is somewhat more constrained, by Disciplinary Rule 7-107(G).  That Rule requires that

> A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication and that relates to:
> (1) Evidence regarding the occurrence or transaction involved.
> (2) The character, credibility, or criminal record of a party, witness, or prospective witness.
> (3) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
> (4) [The lawyer's] opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.
> (5) Any other matter reasonably likely to interfere with a fair trial of the action.

Accordingly, the Appellant Group may conduct discovery under topic 3 limited to determining  Appellee's former or present counsel's actions in making or participating in making the contested extrajudicial statements.

The Appellant Group also seeks discovery to ascertain the facts surrounding the acquisition and use of credit reports of Mr. Sparkman and telephone records of Mr. Sparkman, attorneys and others they believed to be working with him to oppose the permit at issue in the underlying appeal.  Again, this asserted conduct, even if conducted by

---

4 We assume that the Appellant Group is referring to efforts to influence public opinion or the willingness of the members of the Appellant Group to participate in this litigation, and not to any expectation that media reports would have any influence upon the Court.

Appellee's agents with the asserted motive of preparing to challenge statements anticipated to be made by Mr. Sparkman at his deposition, does not implicate either disrespect for the authority of the Court or disobedience to its orders.

However, again, Appellee's attorneys are held to the standards of the disciplinary rules, both in publicizing this information as discussed above, and in gathering and using the information. Disciplinary Rule 7-102(A) provides that, in representing a client, a lawyer shall not:

> (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of [the] client when [the lawyer] knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
> *    *    *
> (5) Knowingly make a false statement of . . . fact.
> *    *    *
> (7) Counsel or assist [the] client in conduct that the lawyer knows to be illegal or fraudulent.

Accordingly, the Appellant Group may conduct discovery under topic 3 limited to the following three areas: 1) to determine the legality of Appellee's agents' acquisition of the contested records and the accuracy of those records, 2) if illegal, to determine Appellee's former or present counsel's actions, if any, in counseling or assisting the client and 3) if inaccurate, to determine Appellee's former or present counsel's actions, if any, in asserting any position, making any statement, or taking any other action based on those records.

On or before April 10, 2000, the parties shall file with the Court either a stipulated schedule for discovery on and briefing of the motions for sanctions, or shall each file with the Court their proposed schedules for discovery and briefing of their respective motions for sanctions.

Done at Barre, Vermont, this 29th day of March, 2000.

_____

7

Merideth Wright
Environmental Judge